J-S18030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| SHARIF JOMAL GIVENS, II | : | |
| Appellant | : | No. 440 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 3, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003387-2019

BEFORE: PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.: **FILED SEPTEMBER 12, 2023**

Appellant, Sharif Jomal Givens, II, appeals from the Judgment of Sentence entered in the Delaware County Court of Common Pleas on December 3, 2021, following his conviction for Robbery and Recklessly Endangering Another Person ("REAP").[1] After careful review, we affirm Appellant's convictions but vacate his judgment of sentence and remand for resentencing consistent with this decision.

We glean the following relevant facts and procedural history from the certified record and the trial court's Pa.R.A.P. 1925(a) Opinion. In the early hours of April 28, 2019, Appellant robbed a Sunoco convenience store in Haverford Township, while carrying a firearm. He obscured his face with a

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii) and 2705, respectively.

mask and his hands by wearing gloves. Relevantly, he wore a black sweatshirt, sweatpants with a logo on one leg, and Nike sneakers with white soles, while holding a Nike bag with a gold swoosh. Fearing for his life, the convenience store clerk ran out of the store and called 911. After the clerk left, Appellant stole Newport cigarettes and Juul smoking devices.

Minutes after leaving the Sunoco store, Appellant robbed a nearby 7-11 convenience store. He again entered the store brandishing a firearm and wearing the same mask and clothing but without gloves, which revealed a tattoo on his hand. The clerk complied with Appellant's demand to hand over Newport cigarettes, Juul smoking devices, and cash. After Appellant exited, the clerk immediately called 911.

Both stores had security camera footage of the incidents. When police reviewed the Sunoco store's footage, they noticed that Appellant had entered and made cash purchases at the store on two occasions earlier in the evening without a mask and while wearing the same sweatpants and sneakers. In the earlier appearances, Appellant wore a gray sweatshirt with a distinctive logo, rather than a black sweatshirt. The earlier Sunoco videos also showed that Appellant had a tattoo on his hand.

Police used the videos to identify Appellant. When police arrested Appellant on May 11, 2021, he was carrying a Nike bag that matched the one in the surveillance video and contained two Juul cigarettes and a Juul cartridge. The officers also recovered from Appellant a gray sweatshirt with the same distinctive logo as seen in the earlier Sunoco videos. The

Commonwealth charged him with two counts of Robbery, two counts of REAP, and numerous other related charges.

On September 9, 2021, five days before trial, the Commonwealth received a report regarding the contents of Appellant's phone, which police had prepared in 2019 ("Cell Phone Report"). The Commonwealth asserted that it informed Appellant's counsel of the report on the same day it received the report. The report contained inculpatory evidence that Appellant had attempted to sell Newport cigarettes and Juul smoking devices less than 24-hours after the robberies via text messages.

Before trial on September 14, 2021, Appellant's counsel verbally filed a motion *in limine* to exclude the Cell Phone Report based upon the Commonwealth's failure to disclose the inculpatory report earlier.[2] The trial court denied the motion, finding that Appellant had not been prejudiced by the delayed disclosure.

At trial, the Commonwealth presented the testimony of the Sunoco clerk, who identified Appellant as the perpetrator, as well as Haverford Township Police Officer Michael Travaline who investigated the crime scene and reviewed the store surveillance videos.[3] During their testimonies, the Commonwealth played the surveillance videos but did not formally move for the admission of the videos into evidence. Additionally, Detective Christopher

_____

[2] N.T., 9/14/21, at 4-7.

[3] The 7-11 clerk also testified but was not able to identify the perpetrator.

Tankelewicz of the Delaware County Criminal Investigation Division testified regarding the text messages included in the Cell Phone Report.

On September 16, 2021, the jury found Appellant guilty of two counts each of Robbery, as a first-degree felony, and of REAP, as a second-degree misdemeanor.[4]  On December 3, 2021, the trial court sentenced Appellant to a term of 120 to 240 months of incarceration for each Robbery conviction, to be served consecutively, and a term of 18 to 36 months of incarceration for each REAP conviction to be served concurrently with the related Robbery conviction.[5]

Appellant filed a post-sentence motion on December 10, 2021, which the trial court denied on January 10, 2022.  Appellant filed a Notice of Appeal on February 7, 2022.  Thereafter, the trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

1. Whether the trial court committed reversible error when it denied Appellant's *motion in limine* and permitted the prosecution to introduce at trial the contents of a cellular telephone report generated in 2019 but not provided to the defense until one week prior to trial in September 2021, since that evidence constituted mandatory discovery under Pa.R.Crim.P. 573(B)(1), and its

---

[4] Prior to trial, the court disposed of, or the Commonwealth withdrew, the other related charges.

[5] The initial sentencing order erroneously calculated the aggregate sentence to be 138 to 276 months, instead of 240 to 480 months.  On June 23, 2022, the court issued an amended order correcting the aggregate term, after this appeal had been filed.  No party has challenged this correction.

introduction violated Appellant's state and federal constitutional rights?

2. Whether the evidence is insufficient to sustain the convictions for two counts of robbery and two counts of [REAP] since the prosecution failed to prove Appellant's identity as the offender in either incident beyond a reasonable doubt?

3. Whether the eighteen to thirty-six month confinement sentences for [REAP] are illegal since they exceed the two-year statutory limit for second-degree misdemeanor offenses?

Appellant's Br. at 6.

**A.**

Appellant first challenges the trial court's admission of the Cell Phone Report, which the prosecution provided to Appellant's counsel five days before trial. It is axiomatic that the "admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Shelton*, 170 A.3d 549, 552 (Pa. Super. 2017) (citation omitted). We will not find an abuse of discretion unless the "ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Id.* (citation omitted). Where "the trial court indicated the reason for its decision to admit [the evidence], our scope of review is limited to an examination of the stated reason." *Commonwealth v. Minerd*, 753 A.2d 225, 229 (Pa. 2000).

To protect defendant's constitutional due process rights and to guard against "trial by ambush," Pennsylvania's Rules of Criminal Procedure mandate that the Commonwealth disclose various categories of information

to defendants prior to trial. ***Commonwealth v. Ulen***, 650 A.2d 416, 418 (Pa. 1994); ***see*** Pa.R.Crim.P. 573(B)(1); ***Commonwealth v. Brown***, 200 A.3d 986, 993–94 (Pa. 2018) (interpreting Rule 573 as requiring disclosure when evidence is requested by the defendant, material to the case, and within the possession of the prosecutor). Relevant to the instant case, Rule 573(B)(1) applies to any "inculpatory statement" as well as "any results or reports of scientific tests." Pa.R.Crim.P. 573(B)(1)(b), (e).

In the event of a discovery violation, the trial court may order discovery, grant a continuance, prohibit the introduction of the evidence, "or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 573(E). A discovery violation "does not automatically entitle [an] appellant to a new trial[; r]ather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure." ***Brown***, 200 A.3d at 993 (citation omitted).

Appellant claims that the trial court erred in denying his motion *in limine* regarding the Cell Phone Report, which he argued violated Pa.R.Crim.P. 573(B)(1) and his state and federal due process rights. Appellant's Br. at 13 (citing U.S. CONST. AMENDS. V, VI, XIV; PA. CONST. ART. 1, § 9). We disagree and instead conclude that the trial court did not abuse its discretion in denying Appellant's motion *in limine*.

Specifically, the trial court denied the motion, finding that the late disclosure of the Cell Phone Report did not prejudice Appellant. N.T., 9/14/21,

at 6-7. It reasoned that "defense counsel had the opportunity to view the report prior to trial[;] there was no question as to the authenticity of the cell phone and that it did belong to defendant[;] and there was no assertion that the phone records were exculpatory." Tr. Ct. Op. at 5-6.

After careful review of the record, we agree with the trial court's analysis. We note that Appellant baldly objected to the admission of the report based solely upon the "delay and lateness in the discovery process[,]" without explaining how the delay impacted the defense or showing any prejudice resulting from the delayed disclosure. N.T., 9/14/21, at 5.

Before this Court, Appellant asserts for the first time that the delayed disclosure of the report prevented him from preparing a defense. Appellant's Br. at 17. Appellant did not raise this argument before the trial court. N.T., 9/14/21, at 4-6. Thus, we find Appellant waived this aspect of his claim. Pa.R.A.P. 302(a).

Accordingly, we conclude that the trial court did not abuse it discretion in denying Appellant's motion *in limine* and admitting the Cell Phone Report.

**B.**

Appellant next challenges the sufficiency of the evidence, claiming mistaken identity. Appellant's Br. at 20-23. "A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). When reviewing challenges to the sufficiency of the evidence, we consider whether "there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a

reasonable doubt." ***Commonwealth v. Jones***, 271 A.3d 452, 458 (Pa. Super. 2021), *appeal denied*, 282 A.3d 1122 (Pa. 2022), and *cert. denied sub nom*. ***Jones v. Pennsylvania***, 143 S. Ct. 469 (2022) (citation omitted). In regard to establishing a perpetrator's identity "common items of clothing and general physical characteristics are usually insufficient to support a conviction[;]" however, "such evidence can be considered to establish identity in conjunction with other circumstances and identification testimony." ***Commonwealth v. Williams***, 255 A.3d 565, 579 (Pa. Super. 2021).

Central to Appellant's argument, appellate courts review "all the evidence **admitted at trial** in the light most favorable to the verdict winner" and may not reweigh the evidence nor substitute our judgment for that of the factfinder. ***Jones***, 271 A.3d at 457-58 (citation omitted and emphasis added). Instead, we defer to the factfinder, who assesses "the credibility of witnesses and the weight of the evidence" and "is free to believe all, part or none of the evidence." ***Id.*** at 458 (citation omitted).

Appellant argues that the Commonwealth failed to demonstrate that he perpetrated the crimes as required by the relevant provisions of the Crimes Code.[6] In so doing, Appellant argues that this Court should not consider the

---

[6] Specifically, "[a] person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S. § 3701(a)(1)(ii). In turn, REAP requires that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. Appellant does not contest the sufficiency of the evidence supporting any element of these offenses other than the identity of the perpetrator.

surveillance videos because the Commonwealth did not move for their admission into evidence. Thus, he asserts that the videos are not within this Court's scope of review as they were not admitted at trial. Appellant's Br. at 23.

We conclude that Appellant waived this claim based upon on our recent decision in **Jones**. As in the instant case, **Jones** involved a crime captured on surveillance video, which was played for the court as factfinder, but which the Commonwealth did not move for admission into evidence. **Jones**, 271 A.3d at 455. This Court emphasized that "[a]t no time during trial, or even in his post sentence motion, did [Jones] ever contend that the video was not part of the evidence before the trial court." **Id.** at 457. We explained that "[w]here a party does not object to the trial court's consideration of items not formally admitted into evidence despite notice that the trial court viewed the items as evidence on which it could make findings, the objection to consideration of the unadmitted items is waived." **Id.**

As in **Jones**, we conclude that Appellant waived his ability to challenge the surveillance videos based on the lack of formal admission. Appellant did not object to the utilization of the surveillance videos, which were played for the jury and supported by testimony of the Sunoco clerk and Officer Travaline. N.T., 9/15/21, 15-18, 33, 56-57. Moreover, Appellant's counsel, as well as the trial court and the Commonwealth, proceeded as if the videos had been admitted for the jury's consideration. Indeed, Appellant's counsel addressed the surveillance videos in cross examination as well as in his closing argument

by highlighting details in the videos to challenge the identification of Appellant as the perpetrator. N.T., 9/15/21, at 18-21, 61-66; N.T., 9/16/21, at 16, 19. Additionally, Appellant did not provide the trial court an opportunity to address this aspect of his broader sufficiency claim as he did not raise it prior to his briefing to this Court.[7] Accordingly, we conclude that Appellant waived his challenge to the consideration of the video for purposes of his sufficiency of the evidence claim.

Appellant also contends that the jury's verdict was based on "conjecture and speculation[,]" even when including the surveillance videos, which he asserts were low-quality. Appellant's Br. at 23. He argues that neither clerk "had a good opportunity to observe the offender[,]" given the short duration of the encounters and the mask obscuring the perpetrator's face *Id.* at 21. Appellant emphasizes that the 7-11 clerk never identified Appellant as the perpetrator and that the Sunoco clerk identified him only after watching the surveillance videos. *Id.* at 22. He further observes that the Commonwealth did not present additional physical evidence tying him to the crimes, such as fingerprint evidence or the firearm. Appellant, thus, maintains that the Commonwealth failed to produce sufficient evidence that he perpetrated the crimes. We disagree.

---

[7] While Appellant raised the overarching issues of the sufficiency of the evidence in his Pa.R.A.P. 1925(b) Statement, he did not specifically address the Commonwealth's failure to move for admission of the surveillance videos before the trial court. Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal, 3/4/22, at 2.

The record reflects that the Commonwealth presented the jury with abundant evidence tying Appellant to the gun-point robberies of the Sunoco and 7-11 stores, including surveillance video of Appellant without a mask in the Sunoco store prior to the robberies and while masked during both robberies. The trial court noted that Appellant was identifiable in the surveillance videos based upon his hand tattoos, "other matching physical features[,]" and the "distinct emblem" on his clothing. Tr. Ct. Op. at 2. Moreover, upon arrest, the police found him in possession of Juul smoking devices in the Nike bag, along with the gray sweatshirt with a distinctive logo, in addition to a cell phone with messages offering for sale Newport cigarettes and Juul smoking devices hours after the robbery. *Id.* at 2-3. Appellant's sufficiency of the evidence claim fails.

## C.

Finally, Appellant challenges the legality of the 18 to 36-month sentence that the trial court imposed for each REAP conviction. While Appellant did not raise this issue until his briefing to the Court, we recognize that a challenge to the legality of a sentence is non-waivable. *See Commonwealth v. Tanner*, 61 A.3d 1043, 1046 (Pa. Super. 2013).

"When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Lekka*, 210 A.3d 343, 355 (Pa. Super. 2019) (citation omitted). After determining that a sentence is illegal, this Court may "amend the sentence directly[;] however, if "a correction by this Court may upset the sentencing scheme envisioned by

the sentencing court, the better practice is to remand." ***Id.*** at 358-59 (citations omitted).

Appellant asserts, and the Commonwealth concedes, that his 18 to 36-month sentences for the REAP convictions are illegal because they exceed the two-year statutory maximum sentence for a second-degree misdemeanor. Appellant's Br. at 24; Commonwealth's Br. at 21-22. We are constrained to agree.

The Crimes Code defines REAP as a "misdemeanor of the second degree" and designates that the sentence of imprisonment "shall not be more than . . . two years in the case of a misdemeanor of the second degree." 18 Pa.C.S. §§ 2705, 1104(2). Accordingly, the trial court's imposition of a maximum sentence of 36 months for Appellant's REAP convictions is patently illegal. As vacating only the REAP sentences may upset the trial court's sentencing scheme, we vacate the judgment of sentence and remand to the trial court for resentencing on all the convictions.

Convictions affirmed. Judgment of sentence vacated, and case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2023

- 12 -